3RD JUDICIAL DISTRICT COURT
DONA ANA COUNTY NM
FILED IN MY OFFICE
11/21/2017 5:14:58 PM
DAVID S. BORUNDA
Jodie Delgado

Exhibit A

**THIRD JUDICIAL DISTRICT**
**COUNTY OF DONA ANA**
**STATE OF NEW MEXICO**

**A MOUNTAIN PROFESSIONAL CONSTRUCTION LLC,**

**Plaintiff,**

**vs.**

**No.** D-307-CV-2017-03776
**Judge:** Martin, James T.

**ARBORUNDA, INC.,**

**Defendant.**

**CIVIL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION**

Plaintiff, A Mountain Professional Construction LLC, by and through its counsel, CARRILLO LAW FIRM, P.C., (Raul A. Carrillo, Jr. and Steven E. Jones), files this Complaint and Application for Temporary Restraining Order / Preliminary Injunction against Defendant, ARBorunda, Inc., and in support of its Complaint states:

1. Plaintiff is a New Mexico limited liability company with its principal place of business in Doña Ana County, New Mexico.

2. On information and belief, Defendant is a New Mexico Corporation with its principal place of business in Dona Ana County, New Mexico.

3. Defendant may be served with process through its registered agent, Rita Borunda, at 1893 Bridger, Las Cruces, NM 88001.

4. This cause of action arose in Doña Ana County.

5. Jurisdiction is proper in this Court.

6.      Venue is proper in this Court.

7.      Plaintiff and Defendant entered into a Contractual Agreement on January 25, 2017, (the "Contract"). *See* Ex. 1.

8.      The Contract is supported by offer, acceptance, consideration and mutual assent to the terms of the contract.

9.      The contract proposal was approved by Plaintiff, and submitted to and reviewed by Defendant.

10.      This proposal and subsequent proposal were rejected for reasons related to Defendant's desire to reduce costs on the job.

11.      After two separate proposals were created, none of which referenced a line item for pre-precast concrete trenches or troughs, a proposal was finally accepted.

12.      A schedule of values was submitted with each of the above reference proposals, and both times precast concrete trenches or troughs were excluded.

13.      The final schedule of values, using Defendant ARBorunda's form, was submitted, and again excluded precast concrete trenches or troughs.

14.      In the initial draft of the specifications for this project, section 4.38, which was later used for troughs, was not used and listed as "NOT USED".

15.      A reference to precast concrete trenches or troughs was not introduced until amendment 3, and then only in the electrical section, section 4.38, which is outside the scope of Plaintiff's work.

16.      On May 22, 2017 Dustin Munda, an agent of the Defendant, urged the Project Estimator to order precast concrete trenches or troughs.

17.     Plaintiff A Mountain Construction never requested pricing or submittals on precast concrete troughs.

18.     The submittals and pricing information were provided for Defendant ARBorunda by Dustin Munda, then passed on to A Mountain Construction.

19.     Dustin Munda requested the quotation from the manufacturer.

20.     Plaintiff A Mountain Construction made no attempt to order precast concrete trenches or troughs because they were not included in their proposal, and are not a part of their scope of work.

21.     Defendant ARBorunda, Inc. has consistently taken the position that A Mountain Construction is responsible for the troughs, even though that position is not supported by the language of the contract, nor supported by the "the scope and the plans".

22.     The plans for the project do not provide direction, nor any indication, that trenches and troughs would be Plaintiff A Mountain Construction's responsibility.

23.     A Mountain Construction is not an electrical contractor, did not bid on electrical items, and is not responsible for the concrete troughs.

24.     The contractual value of the services contemplated meets the minimum jurisdictional amount required for venue in this Court.

25.     Defendant is in breach of the contract and has failed to pay fees due for services rendered according to the specifications agreed on by the parties and is therefore liable to Plaintiff for said fees due.  See the following:

        a.   Application and Certification for Payment G702, Pay Request No. 6, in the amount of $16,800.00 (*see* Ex. 2); and

b.   Application and Certification for Payment G702, Pay Request No. 7, in the amount of $61,267.75 (*see* Ex. 3);

26.   Additionally, Defendant is either in breach of contract and has failed to pay fees due for services rendered (or, alternatively, has been unjustly enriched, or, alternatively, induced or knowingly allowed Plaintiff to rely on Defendant's representations or promises to Plaintiffs' detriment) and is therefore liable for said fees due and/or restitution for the purchase of precast concrete troughs and related necessary expenses, in the amount of $83,019.01. *See* Ex. 4.

27.   Upon information and belief, Defendant has already been paid for one or more of the above payments.

28.   Upon information and belief, by Defendant has failed to conform to the requirements of its role as the prime contractor on the contract at issue.

29.   Defendant's breach of the contract has caused the Plaintiffs monetary injury in an amount to be proved at trial.

30.   Defendant has engaged in misrepresentations to Plaintiff, which cause Plaintiff or its agents (either with or without authority, to be proven through discovery) to rely on these misrepresentations, to the detriment of Plaintiff.

31.   Defendant's other actions, including the above facts supporting unjust enrichment, detrimental reliance, and promissory estoppel, entitle Plaintiff to equitable relief in addition to any relief available at law.

32.   **Request for Attorneys' Fees:**  In addition, Plaintiff have had to incur attorneys' fees and costs to vindicate their rights under the contract, and they now request reimbursement for same.

33. **Request for Injunctive Relief:** Because an adequate remedy at law is not available, Plaintiff request injunctive relief against Defendant in order to prevent immediate irreparable harm to Plaintiff and others as allowed by law, including (but not limited to) an order compelling Defendant to make one or more payments due to Plaintiff at law or in equity (or both). Specifically, Plaintiff request relief including (but not limited to) a preliminary injunction and post-judgment injunctive relief.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

34. Plaintiff, through counsel, Carrillo Law Firm, P.C. (Raúl A. Carrillo, Jr.), pursuant to Rule 1-066 NMRA, respectfully applies for a Temporary Restraining Order and Preliminary Injunction, regarding certain injurious behavior by the Defendant. A sworn affidavit is attached hereto as Exhibit 5. In support of said Application, Plaintiff states as follows:

### General Statement of Facts in Support of Application for Temporary Restraining Order and Preliminary Injunction

35. Plaintiff, A Mountain Professional Construction, LLC, entered into a contract with Defendant, ARborunda, Inc.

36. Plaintiff and Defendant entered into a Contractual Agreement on January 25, 2017, (the "Contract").

37. The Contract is supported by offer, acceptance, consideration and mutual assent to the terms of the contract.

38. The contract proposal was approved by the owner of Plaintiff A Mountain Construction, and submitted to and reviewed by Defendant.

39.     This proposal and subsequent proposal were rejected for reasons related to Defendants desire to reduce costs on the job.

40.     After two separate proposals were created, none of which referenced a line item for pre-precast concrete trenches or troughs, a proposal was finally accepted.

41.     A schedule of values was submitted with each of the above reference proposals, and both times precast concrete trenches or troughs were excluded.

42.     The final schedule of values, using Defendant ARBorunda's form, was submitted, and again excluded precast concrete trenches or troughs.

43.     In the initial draft of the specifications for this project, section 4.38, which was later used for troughs, was not used and listed as "NOT USED".

44.     A reference to precast concrete trenches or troughs was not introduced until amendment 3, and then only in the electrical section, section 4.38, which is outside the scope of Plaintiff's work.

45.     On May 22, 2017 Dustin Munda, an agent of the Defendant, urged the Project Estimator to order precast concrete trenches or troughs.

46.     Plaintiff A Mountain Construction never requested pricing or submittals on precast concrete troughs.

47.     The submittals and pricing information were provided for Defendant ARBorunda by Dustin Munda, then passed on to A Mountain Construction.

48.     Dustin Munda requested the quotation from the manufacturer.

49.     Plaintiff A Mountain Construction made no attempt to order precast concrete trenches or troughs because they were not included in their proposal, and are not a part of their scope of work.

50.     Defendant ARBorunda, Inc. has consistently taken the position that A Mountain Construction is responsible for the troughs, even though that position is not supported by the language of the contract, nor supported by the "the scope and the plans".

51.     The plans for the project do not provide direction, nor any indication, that trenches and troughs would be Plaintiff A Mountain Construction's responsibility.

52.     A Mountain Construction is not an electrical contractor, did not bid on electrical items, and is not responsible for the concrete troughs.

53.     The contractual value of the services contemplated meets the minimum jurisdictional amount required for venue in this Court.

54.     Defendant is in breach of the contract and has failed to pay fees due for services rendered according to the specifications agreed on by the parties and is therefore liable to Plaintiff for said fees due.  See the following:

      a.  Application and Certification for Payment G702, Pay Request No. 6, in the amount of $16,800.00; and

      b.  Application and Certification for Payment G702, Pay Request No. 7, in the amount of $61,267.75;

55.     Additionally, Defendant is either in breach of contract and has failed to pay fees due for services rendered (or, alternatively, has been unjustly enriched, or, alternatively, induced or knowingly allowed Plaintiff to rely on Defendant's representations or promises to Plaintiff' detriment) and is therefore liable for said fees due and/or restitution for the purchase of precast concrete troughs and related necessary expenses, in the amount of $83,019.01.

**Specific Statement of Facts As Immediate Grounds for Injunctive Relief**

56. Plaintiff is a small business that depends on the timely payment of amounts due under its contracts. Plaintiff relies on funding to come forward on a daily basis, and this affects Plaintiff's credibility with vendors and as a company.

57. Without timely payment of the amounts due under its contracts, Plaintiff will become insolvent within a matter of days. All monies received from other projects have been utilized to cover expenses for work that has already been performed on the project at issue in this case.

58. As the prime contractor on the project, Defendant has already been paid at least $16,800.00 for the work that Plaintiff performed on the contract, based on disclosures provided to Plaintiff by Defendant. Therefore, Defendant would not suffer harm due to being compelled to make the requested next scheduled payment of $16,800.00 to Plaintiff, which is already designated to be paid to Plaintiff.

59. In this case, the failure of Defendant to make timely payment of its next scheduled payment to Plaintiff (in the amount of $16,800.00) will result in Plaintiff's immediate insolvency within a number of days, i.e., less than 5 business days.

60. If Plaintiff becomes insolvent, then it will not be able to pursue a trial on the merits. Therefore, an adequate remedy at law would not be available to Plaintiff.

**Argument in Support of Application**

61. An injunction may be granted in sound discretion of court when remedy at law is not adequate. *State ex rel. State Tax Commission v. First Judicial Dist. Court*, 1961 -NMSC-157, ¶13.

62.     This Court has discretion to order preliminary injunctive relief if: (1) the party requesting the relief has a substantial likelihood of prevailing on the merits of the issue; (2) if the party requesting relief will suffer irreparable injury if denied the injunction; (3) if the threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest. *LaBalbo v. Hymes*, 1993-NMCA-010. The preliminary injunction is to preserve the *status quo* pending the outcome of the case, and to preserve the Court's power to render a meaningful decision on the merits.  *Tri-State Generation v. Shoshone River Power Co.*, 805 F.2d 351, 355 (10th Cir. 1986).

63.     Plaintiff asks for the Court to preserve the status quo by ordering Defendant to make its next payment due (for $16,800.00) under the contract.

64.     Given the relative size of the parties, the threatened injury to Plaintiff outweighs any damage that an injunction may cause Defendant.

65.     The public interest would not be adversely affected by the issuance of a temporary restraining order or preliminary injunction.  The public interest favors the preservation of the status quo until a trial on the merits can be heard.

66.     Plaintiff hereby requests that the Court issue a temporary restraining order and/or preliminary injunction requiring Defendant to make its next scheduled payment of $16,800, in order to preserve the status quo and to ensure that a trial on the merits can be heard.

67.     Due to the financial status of Plaintiff, as specified in Plaintiff's affidavit, a bond or other security should not be required.

WHEREFORE, Plaintiff request the Court award judgment against the Defendant, order that the Defendant pay the Plaintiff all amounts due under the contract, that the court award damages in equity, that the Court award the Plaintiff reasonable attorneys' fees and costs, that

the court award any and all damages available (including incidental damages, consequential damages, that the Court grant injunctive relief preserving the status quo and ordering one or more scheduled payments due under the contract, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

**CARRILLO LAW FIRM, P.C.**

By______________________________

Raúl A Carrillo, Jr., N.M. Bar No. 5600
Steven E. Jones, N.M. Bar No. 121548
1001 E. Lohman Ave.
Las Cruces, NM 88001
(575) 647-3200
raul@carrillolaw.org
*Attorneys for Plaintiff*

**ARborunda, Inc.**
1893 Bridger Ave, Las Cruces, NM 88001
Office (575) 527-4808
FAX (575) 323-3500

## Subcontract

**Contract Number:** W9126G-16-C-0007

**Subcontract Number:** ARB-0001-0007

**Submitted to:**
A Mountain Construction
1177 Scoggins Ave.
Las Cruces, NM 88005
Phone: (575) 525-1405
Fax: (575) 523-0867

# ArBorunda, Inc. Project Requirements

*THINK SAFETY* - HARD HATS ARE REQUIRED ON ALL ArBorunda, Inc. PROJECTS

☑ **SUBMITTALS:** Two (2) hard copies & Four (4) digital copies of your submittals and shop drawings are required for the approval process, as applicable to your scope of work.

☑ **WEEKLY JOB SITE MEETINGS:** Weekly meetings will be held on all job sites.

☑ **CERTIFIED PAYROLL:** Certified Payroll must be submitted weekly using the correct wage determination. A copy of the determination will be attached to your contract, if applicable.

**INVOICES:** Original invoices must be received by the 15th of each month (in house) at ArBorunda, Inc. Invoices must include a reference to Subcontract Number and should include an Interim Lien Waiver (Exhibit 2) or if this is the last or only invoice, a Final Lien Waiver (Exhibit 3).

☑ **PAYMENT SCHEDULE:** Invoices received by the 15th of each month with reference to Subcontract number will be paid on/or about the 15th of the following month, assuming the Owner has funded .

☑ **CHANGE ORDERS:** Changes need prior written approval from the Project Manager in the form of a written Change Order. The progress billing should include amounts for approved (written) Change Orders only with reference to the Change Order numbers.

☑ **INSURANCE REQUIREMENTS:** Prior to any work we require the following insurance certificates:
Worker's Compensation
Commercial General Liability
Automobile Liability
Minimum limits and coverage are detailed in section 12 of your subcontract agreement.

☑ **CLOSE OUT DOCUMENTS:** Per Section 7 of your subcontract, the following close out documents Are required at the time of substantial completion. A reminder memo will be sent prior to the substantial completion date.

1. LETTERS OF WARRANTY AND SERVICE (all subcontractors and suppliers) using the date of substantial completion as advised by our office. **(3 Originals on your letterhead).**

2. O& M MANUALS and/or catalogue sheets for all equipment installed. Materials do not need to be bound or in a notebook as they are taken apart to insert into the manuals. **(3 Copies)**

3. RED LINED/AS-BUILT DRAWINGS and/or fabrication drawings depicting the work constructed and/or installed. **(4 Copies).** If your work was per plans and specifications, please advise in writing that as-builts will not be provided.

Questions may be addressed to the PM at (575) 650-1618 or emailed to ab.arborunda@gmail.com

***Payments will be held when documents are not received in a timely manner.***

1893 Bridger Ave
Las Cruces, NM 88001
Phone (575) 642-9617
Fax (575) 323-0862

# SUBCONTRACT ORDER

| Subcontract No. ARB-0001-0007 | Job Name Building 23240/N78 Renovation and Rail-Gun LC35E | Date January 25, 2017 |
|---|---|---|
| Job Location White Sands Missile Range | Project Manager Dustin Munda | |

INVOICES MUST REFERENCE THIS SUBCONTRACT NUMBER OR THEY WILL BE REJECTED.
SUBCONTRACTOR INVOICES MUST INCLUDE SUBCONTRACTOR INVOICE NUMBER.
PAYMENT OF INVOICES WILL NOT BE MADE WITHOUT COMPLETED LIEN WAIVERS WITH EACH INVOICE
**INVOICES SHOULD BE MAILED TO: ARborunda, INC, 1893 Bridger, Las Cruces, NM, 88001.**

## SUBCONTRACTOR INFORMATION

| Name: A Mountain Construction | | Attn: | | |
|---|---|---|---|---|
| Address: 1177 Scoggins Ave. | | City: Las Cruces | State: NM | Zip Code: 88005 |
| Phone: 575-526-1405 | Fax: 575-523-0867 | State Tax ID (CRS #): | | |
| Email address: | | Federal Tax ID: | | |

Subcontract Order is subject to the following (if marked with "x")

- ☐ Retainage 10%
- ☒ This order requires 100% payment and performance bonds. (BONDS SHOULD ACCOMPANY FULLY EXECUTED SUBCONTRACT IF REQUIRED)
- ☐ This order is for professional services and will not require lien waivers for payment.
- ☒ This order is subject to prevailing wages.
- ☒ This order requires weekly submissions of certified payrolls. (CERTIFIED PAYROLLS SHOULD BE SUBMITTED TO ARborunda INC OFFICE NO LATER THAN TUESDAY FOR THE PREVIOUS WEEK'S PAYROLL... FAILURE TO DO SO WILL RESULT IN REJECTION FOR PAYMENT.)
- ☐ This order requires submission of "Representations and Certifications"

Attachments marked with an "x" are made part of this Subcontract Order:

- ☒ A – Subcontractor Agreement
- ☐ E – Supplemental contractual clauses
- ☒ B – Scope of Work and Schedule of Values
- ☐ C – Client furnished specifications
- ☒ F – Contractor supplied forms
- ☐ D – Client furnished drawings
- ☒ G – Applicable wage determinations

ALL WORK TO BE PERFORMED AS DESCRIBED WITHIN THIS DOCUMENT AND THE ATTACHED FOR THE TOTAL PRICE OF $450,625.29. THE PRICE IS INCLUSIVE OF ALL TAXES AND FREIGHT. ARborunda, Inc SHALL HAVE NO LIABILITY FOR ANY OTHER EXPENSE OR COSTS INCURRED BY SUBCONTRACTOR, EXCEPT PURSUANT TO AN APPROVED WRITTEN, CHANGE ORDER. PAYMENT WILL BE MADE ACCORDING TO THE SUBCONTRACT ATTACHED.

AN EXECUTED COPY OF THE ATTACHED SUBCONTRACT, CERTIFICATES OF INSURANCE, AND, IF REQUIRED A REPRESENTATIONS AND CERTIFICATIONS FORM AND BONDS ARE TO BE RETURNED TO:
**ARborunda, Inc., 1893 Bridger Ave, Las Cruces, New Mexico, 88001**

SUBCONTRACTOR will be responsible for laying out its own work and will be responsible for the accuracy of it. SUBCONTRACTOR will, before proceeding with any affected part of the Work, call to ARborunda's attention, in writing, any errors or inconsistencies in the CONTRACT, this AGREEMENT or any drawing, document or other information.

6. PERMITS AND RESPONSIBILITY: SUBCONTRACTOR, without expense to ARborunda, will obtain and pay for all required licenses, permits, inspections, and registrations and will obey and abide by all laws, regulations, ordinances, and other rules of the United States of America, of the State of Texas, or any other public authority that is applicable to Subcontract and will give all necessary notices required in connection with these permits and licenses.

7. PAYMENT: ARbournda agrees to compensate SUBCONTRACTOR as follows. Invoices will be due to ARborunda, by the 15th of the month for the previous months work. It is understood by SUBCONTRACTOR that invoices must be supported by documentation. SUBCONTRACTOR's invoices are an important part of the preparation of ARborunda's invoice to its CLIENT. Therefore, ARborunda must require that SUBCONTRACTOR invoice ARborunda promptly. Failure to do so may result in delay in payment. ARborunda will thoroughly pursue payment of SUBCONTRACTOR's invoices by its CLIENT. ARborunda agrees to remit payment to SUBCONTRACTOR within ten (10) days after receipt of payment from CLIENT.

Progress invoices must include Subcontractor number, an invoice number, sufficient detail to identify the Work provided, supporting documentation for the amount invoiced including any applicable equipment, labor and/or material, and completed and an executed interim lien waiver (Exhibit 2) to be processed for payment. Incomplete invoices will be rejected and returned to SUBCONTRACTOR.

After completion of work, SUBCONTRACTOR will submit to ARborunda, all required closeout documents, including a final waiver of liens (Exhibit 3) executed by SUBCONTRACTOR, an affidavit of certified payroll declaring that all required certified payrolls have been submitted to ARborunda, copies of all warranties for materials and equipment purchased by SUBCONTRACTOR, and any final invoices for services rendered. Final invoices will be paid in full once all close out documents are received and approved by customer.

8. TAXES/DUTIES/FEES: SUBCONTRACTOR and ARborunda agree that the prices included in the AGREEMENT include all applicable Federal, state and local taxes, including any sales and use taxes, excise taxes, duties and all other governmental fees or charges that apply to the performance of the Work of this AGREEMENT. SUBCONTRACTOR will be responsible for all payroll taxes and contributions relating to wages and salaries to SUBCONTRACTOR's employees.

9. LIENS AND ENCUMBRANCES: The SUBCONTRACTOR for itself, its suppliers and its employees, waives, releases and relinquishes all rights to file any Stop Work Notices, Notice of Intent, Notice of Lien, Mechanic's Lien or other encumbrance against ARborunda, the CLIENT, the jobsite or any monies earned by ARborunda. The filing of such encumbrance will constitute a material breach.

10. ASSIGNMENT AND SUBCONTRACTING: ARborunda and SUBCONTRACTOR each binds itself, its partners, and administrators to this Agreement. Neither ARborunda nor the SUBCONTRACTOR will assign or sublet any interest in this AGREEMENT without prior written authorization of the other.

11. INDEMNITY AND LIABILITY: SUBCONTRACTOR agrees to assure, defend, and hold harmless, ARborunda and the CLIENT, and all of their respective officers, agents, and employees against liability and losses (including defense costs and attorneys' fees) resulting from the performance of the SUBCONTRACTOR services. SUBCONTRACTOR's duty to indemnify under this provision is limited to SUBCONTRACTOR's proportionate fault.

12. INSURANCE: SUBCONTRACTOR will maintain insurance policies as listed below

SUBCONTRACTOR is required to maintain for the full period of this AGREEMENT:

a) Workmen's Compensation Insurance for employees as required by the State of New Mexico and State Workmen's Compensation Laws. Minimum coverage of $100,000 is required

b) Comprehensive General Liability Insurance that provides both bodily injury and property damage, with limits of at least 1,000,000 per occurrence. Policy is to list ARborunda as additional insured.

c) Automobile Liability Insurance, if use of motor vehicle is required, with limits of 100,000 per occurrence. Policy is to list ARborunda as additional insured.

As evidence of specified insurance coverage's, the SUBCONTRACTOR will submit, prior to beginning any work and before any payment is made, certificates issued by the insurance carrier. Such policies will be kept in force for the full period of this AGREEMENT.

13. DOCUMENTS: All data collected by the SUBCONTRACTOR and all documents, notes, drawings, tracings and files collected or prepared in connection with these services, except the SUBCONTRACTOR's personnel, administrative and confidential files, shall be made available to ARborunda.

14. TERMINATION: If the CLIENT terminates the Contract, ARborunda will deliver written notice to SUBCONTRACTOR and the SUBCONTRACTOR will stop all work immediately upon written notice from ARborunda.

If the SUBCONTRACTOR repeatedly fails or neglects to carry out the Work in accordance with this AGREEMENT and fails to correct Work or fails to carry out Work in the time frame set forth, ARborunda may terminate this AGREEMENT and finish the SUBCONTRACTOR's work by whatever means ARborunda deems necessary. The SUBCONTRACTOR will be responsible for the expenses and damages incurred by ARborunda in finishing the SUBCONTRACTOR's work.

ARborunda, by written notice, shall have the right to terminate and cancel this AGREEMENT, without SUBCONTRACTOR being at fault, for any cause or for its own convenience, and require the SUBCONTRACTOR to immediately stop work. In such event, ARborunda will pay SUBCONTRACTOR for the work actually performed in an amount proportionate to this AGREEMENT price. ARborunda shall not be liable to the SUBCONTRAGTOR for any other costs, including prospective profits on work not performed.

1893 Bridger Ave
Las Cruces, NM 88001
Phone (575) 642-9717
Fax (575) 323-3500

Subcontract No: ARB-0001-0007

## ATTACHMENT A
## SUBCONTRACTOR SERVICES AGREEMENT
### TERMS AND CONDITIONS

This Agreement is entered into by and between ARborunda, Inc. (ARborunda) and **SUBCONTRACTOR** as of the date written. The parties agree as follows:

1. **AGREEMENT: SUBCONTRACTOR** acknowledges that ARborunda has entered into an agreement with a third party, who will be referred to as the **CLIENT**, for services in connection with the job (**CONTRACT**) specified in this **AGREEMENT**. **SUBCONTRACTOR** is not permitted to contact the **CLIENT** regarding issues relative to this **AGREEMENT** or the **CONTRACT** without prior written approval of Arborunda. **SUBCONTRACTOR** also agrees that it has examined, inspected and familiarized itself with the site where the work covered by this Subcontract is to be performed.

   This document and all attachments, represent the entire Agreement between ARborunda and the **SUBCONTRACTOR**. There are no agreements or conditions between ARborunda and the **SUBCONTRACTOR**, whether written or oral, except those expressed in this **AGREEMENT**.

2. **SCOPE OF SERVICES: SUBCONTRACTOR** shall furnish all labor, materials, supplies, tools and supervision necessary to perform the **CONTRACT**. **SUBCONTRACTOR** further agrees that all work performed: (a) will conform with the terms of this **AGREEMENT**; (b) will be performed in a good, skillful, and workmanlike manner, (c) will be performed by the proper number of experienced, skilled and licensed personnel qualified by education and/or experience to perform their assigned tasks; and (d) will conform to the standard of care, skill, and thoroughness used by other professionals performing the same or similar services. **SUBCONTRACTOR** shall have at the job site, at all times, a competent English-speaking superintendent, with authority to act for **SUBCONTRACTOR**. Further, the work will be performed in accordance with the documents set forth in the **CONTRACT**.

   At all times during performance of the work, **SUBCONTRACTOR** shall remove from the job site and surrounding area all trash, waste and surplus materials resulting from the work. Upon completion of the work, **SUBCONTRACTOR** shall leave the job site and surrounding area clean and ready for use. **SUBCONTRACTOR** shall promptly comply with ARborunda's reasonable request to perform such cleanup at any time, or periodically during work progress. ARborunda reserves the right to back-charge **SUBCONTRACTOR** for cleanup work not performed as specified.

   If any utility service must be disconnected (even temporarily) due to the work, **SUBCONTRACTOR** shall notify the ARborunda office at least 10 days in advance of such interruption

   **SUBCONTRACTOR** may be ordered in writing by ARborunde, without invalidating this **AGREEMENT**, to make changes in the work within the general scope of this **AGREEMENT**, the price and time of performance will be adjusted accordingly and detailed in a Subcontractor Change Order Agreement.

3. **SCHEDULE:** The work shall be performed according to the schedule outlined by ARborunda, which may be modified per the instructions of the ARborunda Project Manager. Time is of the essence in the performance of the work. **SUBCONTRACTOR** shall schedule its operations to begin the organized construction and completion of the work on or before the completion date. **SUBCONTRACTOR** agrees to coordinate his work with any other work to be done on the job by any other contractors. In the event of any overlap in work or time conflict with the contractors. **SUBCONTRACTOR** agrees to abide by the resolutions and decisions of Arborunda. Any extension of the contract completion date may only be granted by ARborunda in writing. **SUBCONTRACTOR** will not be entitled to extra compensation for any suspension, delay or rushing of the job not specifically allowed and paid to ARborunda by its **CLIENT** for **SUBCONTRACTOR**'s benefit.

4. **HEALTH AND SAFETY: SUBCONTRACTOR** acknowledges that it is familiar with the work to be performed, the conditions of the job site, and the Necessity for the safety of its personnel and others during the performance of the work. **SUBCONTRACTOR** shall comply with all safety laws including those under federal and state occupational, safety and health acts.

   **SUBCONTRACTOR** shall take all necessary precautions for the safety of its employees on the work site, and shall comply with all federal, state and municipal safety laws and building codes to prevent accidents or injury to person on or near job site. Failure to familiarize itself thoroughly with the aforementioned safety provisions will not relieve **SUBCONTRACTOR** from compliance with the obligations and penalties set forth herein.

   **SUBCONTRACTOR** will designate an individual at the job site and in its employ, who is a "competent person" as defined by regulations issued under the Occupational Safety and Health Act, and who shall act as **SUBCONTRACTOR**'s designated safety representative. **SUBCONTRACTOR**'s safety representative will have a duty to prevent accidents. Unless otherwise identified by **SUBCONTRACTOR** in writing, the designated safety representative shall be **SUBCONTRACTOR**'s On-Site Job Superintendent.

   When so ordered, **SUBCONTRACTOR** shall stop any part of the Work that ARborunda deems unsafe until corrective measures satisfactory to ARborunda have been met. Should **SUBCONTRACTOR** neglect to meet such corrective measures, ARborunda may do so and deduct the cost from payments due or to become due **SUBCONTRACTOR**.

5. **INSPECTIONS AND APPROVALS: SUBCONTRACTOR** will provide sufficient safe and proper facilities for inspection of the Work by ARborunda, its **CLIENT** and all other authorized individuals. **SUBCONTRACTOR** will notify ARborunda when portions of the Work are ready for inspection.

15. CONFIDENTIALITY: The SUBCONTRACTOR agrees that, in the performance of the work, its personnel will maintain the confidentiality of this Job. SUBCONTRACTOR's personnel shall not disclose any data or information to any party other than ARborunda's personnel concerning the Job Site or the Job, including the nature or the results of the work performed by the SUBCONTRACTOR, and the SUBCONTRACTOR shall direct all third party inquiries or comments to ARborunda's on-site representative.

16. LABOR STANDARDS

a) Davis-Bacon Act - Unless specified, this job is subject to the Davis-Bacon Act (40USC 276a-276a-7) and the SUBCONTRACTOR will be required to comply with all associated regulations, including the submission of weekly-certified payrolls. The SUBCONTRACTOR acknowledges that it understands these regulations and requirements. Payment to the SUBCONTRACTOR by ARborunda will be contingent upon the receipt of original signed certified payrolls approved by ARborunda for all weeks covered by the SUBCONTRACTOR's invoice.

b) Equal Employment Opportunity – Unless otherwise exempt, SUBCONTRACTOR agrees to comply with the Equal Employment Opportunity clause and the regulations of the Department of Labor contained in Title 41 of the Code of Federal Regulations (CFR), Chapter 60, which are incorporated herein by reference.

c) Affirmative Action for Disabled Veterans and Vietnam-era Veterans – If the AGREEMENT equals or exceeds $25,000 and is not otherwise exempt, SUBCONTRACTOR agrees to comply with the Affirmative Action clause and the regulations of the Department of Labor contained in Title 41 CFR, Part 60-250, which are incorporated herein by reference.

d) Affirmative Action for Disabled Workers – If the AGREEMENT exceeds $10,000 and is not otherwise exempt, SUBCONTRACTOR agrees to comply with the Affirmative Action clause and the regulations of the Department of Labor contained in Title 41 CFR, Part 60-741, which is incorporated herein by reference.

GOVERNMENT CLAUSES: The following clauses are incorporated into this subcontract when the work is to be performed on a government installation or for a governmental customer

17. CONTRACT WORK HOURS AND SAFETY

a) Per Federal Acquisition Regulation 22.300 all contractors and subcontractors are required to pay 1 and ½ times the basic rate of pay for each hour worked over 40 hours in any workweek.

b) Violation of said overtime requirements shall be the responsibility of the responsible Contractor and subcontractor. They are liable for unpaid wages in addition to liquidated damages payable to the Government. The contracting officer will assess liquidated damages at the rate of $10.00 per affected employee for each calendar day on which the employer required or permitted the employee to work in excess of the standard workweek of 40 hours without payment of the overtime wages required by the Contract Work Hours and Safety Standards Act.

18. PAYROLL AND BASIC RECORDS -- Contractor and subcontractor shall maintain payrolls and basic payroll records for all laborers and mechanics working on the contract until completion. These records shall include name and address of each employee, social security number, labor classifications, hourly rates of wages paid, daily and weekly number of hours worked, deductions made, and actual wages paid.

a) The Contractor shall submit weekly, a copy of all payrolls to the Contracting Officer, for each week in which any contract work is performed. This information may be submitted in any form desired. The Prime Contractor is responsible for the submission of copies of payrolls by all subcontractors.

b) Each Payroll submitted shall be accompanied by a "Statement of Compliance" signed by the contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract. This Statement shall certify that the payroll is correct and complete, and that each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, and that no deductions have been made other than permissible deductions as set forth in the Regulations, 29 CFR Part 3; and that each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the wage determination incorporated into the contract.

c) The falsification of any of the certifications in this clause may subject the Contractor or subcontractor to civil or criminal prosecution under Section 1001 of Title 18 and Section 3729 of Title 31 of the United States Code.

d) The Contractor and its subcontractors shall allow authorized representatives of the Contracting Officer or the Department of Labor to inspect, copy or transcribe records maintained. The Contractor or subcontractor also shall allow authorized representatives to interview employees in the workplace during working hours. Failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

19. WITHHOLDING OF FUNDS – The contracting officer will withhold from payments due under the contract sufficient funds required to satisfy any Contractor or subcontractor liabilities or unpaid wages and liquidated damages. If amounts withheld are insufficient to satisfy Contractor or subcontractor liabilities, they may withhold payments from other Federal or Federally assisted contracts held by the same Contractor.

20. DISPUTES CONCERNING LABOR STANDARDS – The United States Department of Labor has set forth in 29 CFR Parts 5, 6, and 7 procedures for resolving disputes concerning labor standards requirements. Such disputes shall be resolved in accordance with those procedures and not the Disputes clause of this contract. Disputes within the meaning of this clause include disputes between the Contractor (or any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

21. DAVIS-BACON ACT -- All laborers and mechanics employed or working upon the site of the work will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR Part 3)), the full amount of wages and bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, or as may be incorporated for a secondary site of the work, regardless of any contractual relationship which may be alleged to exist between the Contractor and such laborers and mechanics. Any wage determination incorporated for a secondary site of the work shall be effective from the first day on which work under the contract was performed at that site and shall be incorporated without any adjustment in contract price or estimated cost. Laborers employed by the construction Contractor or construction subcontractor that are transporting portions of the building or work between the secondary site of the work and the primary site of the work shall be paid in accordance with the wage determination applicable to the primary site of the work.

a) Contributions made or costs reasonably anticipated for bona fide fringe benefits under the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of this clause; also, regular contributions

made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such period.

b) Such laborers and mechanics shall be paid not less than the appropriate wage rate and fringe benefits in the wage determination for the classification of work actually performed, without regard to skill, except as provided in the clause entitled Apprentices and Trainees. Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: provided, that the employer's payroll records accurately set forth the time spent in each classification in which work is performed.

c) The wage determination (including any additional classifications and wage rates conformed under this clause) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the Contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

d) The Contracting Officer shall require that any class of laborers or mechanics which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The Contracting Officer shall approve an additional classification and wage rate and fringe benefits therefore only when all the following criteria have been met:

  i. (i) The work to be performed by the classification requested is not performed by a classification in the wage determination.
  ii. (ii) The classification is utilized in the area by the construction industry.
  iii. (iii) The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

e) If the Contractor and the laborers and mechanics to be employed in the classification (if known), or their representatives, and the Contracting Officer agree on the classification and wage rate (including the amount designated for fringe benefits, where appropriate), a report of the action taken shall be sent by the Contracting Officer to the Administrator of the.

Wage and Hour Division
Employment Standards Administration
U S. Department of Labor
Washington, DC 20210

The Administrator or an authorized representative will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the Contracting Officer or will notify the Contracting Officer within the 30-day period that additional time is necessary.

f) In the event the Contractor, the laborers or mechanics to be employed in the classification, or their representatives, and the Contracting Officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the Contracting Officer shall refer the questions, including the views of all interested parties and the recommendation of the Contracting Officer, to the Administrator of the Wage and Hour Division for determination. The Administrator, or an authorized representative, will issue a determination within 30 days of receipt and so advise the Contracting Officer or will notify the Contracting Officer within the 30-day period that additional time is necessary.

g) The wage rate (including fringe benefits, where appropriate) determined pursuant to this clause shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

h) Whenever the minimum wage rate prescribed in the contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the Contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

i) If the Contractor does not make payments to a trustee or other third person, the Contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program; provided, That the Secretary of Labor has found, upon the written request of the Contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the Contractor to set aside in a separate account assets for the meeting of obligations under the plan or program.

22. APPRENTICES AND TRAINEES -

a) An apprentice will be permitted to work at less than the predetermined rate for the work they performed when they are employed—

b) Pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship and Training, Employer, and Labor Services (OATELS) or with a state Apprenticeship Agency recognized by the OATELS; or (ii) in the first 90 days of probationary employment as an apprentice in such an apprenticeship program, even though not individually registered in the program, if certified by the OATELS or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice.

c) The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the Contractor as to the entire work force under the registered program.

d) Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated in paragraph (a)(1) of this clause, shall be paid not less than the applicable wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed.

e) Where a contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the Contractor's or subcontractors registered program shall be observed. Every apprentice must be paid at not less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination.

f) Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determines that a different practice prevails for the applicable apprentice classification, fringes shall be paid in accordance with that determination.

g) In the event OATELS, or a State Apprenticeship Agency recognized by OATELS, withdraws approval of an apprenticeship program, the Contractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

h) Except as provided in 29 CFR 5.16, trainers will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship Training, Employer, and Labor Services (OATELS). The ration of trainees of journeymen on the job site shall not be greater than permitted under the plan approved by OATELS.

i) Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed in the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate in the wage determination which provides

for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the OATELS shall be paid not less than the applicable wage rate in the wage determination for the classification of work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate in the wage determination for the work actually performed. In the event OATELS withdraws approval of a training program, the Contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

j) *Equal employment opportunity.* The utilization of apprentices, trainees, and journeymen under this clause shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR Part 30

23. ANTI-KICKBACK PROCEDURES – "Kickback," as used in this clause, means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime Contractor, prime Contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract. The Anti-Kickback Act of1986 (41 U.S.C. 51-58) (the Act), Prohibits any person from—

a) Providing or attempting to provide or offering to provide any kickback; Soliciting, accepting, or attempting to accept any kickback; or Including, directly or indirectly, the amount of any kickback in the Contract price charged by a prime Contractor to the United States or in the contract price charged by a subcontractor to a prime Contractor or higher tier subcontractor

b) The Contractor shall have in place and follow reasonable procedures designed to prevent and detect possible violations described in this clause in its own operations and direct business relationships.

c) When the Contractor has reasonable grounds to believe that a violation described in this clause may have occurred, the Contractor shall promptly report in writing the possible violation. Such reports shall be made to the inspector general of the contracting agency, the head of the contracting agency if the agency does not have an inspector general, or the Department of Justice.

d) The Contractor shall cooperate fully with any Federal agency investigating a possible violation described in this clause. The Contracting Officer may—

   i. offset the amount of the kickback against any monies owed by the United States under the prime contract and/or

   ii. direct that the Prime Contractor withhold from sums owed a subcontractor under the prime contract the amount of the kickback. The Contracting Officer may order that monies withheld under this clause be paid over to the Government unless the Government has already offset those monies under this clause. In either case, the Prime Contractor shall notify the Contracting Officer when the monies are withheld.

e) The Contractor agrees to incorporate the substance of this clause, including subparagraph (c) but excepting subparagraph (e), in all subcontracts under this contract which exceed $100,000.

24. SUBCONTRACTS

a) *Definition.* "Construction, alteration or repair," as used in this clause means all types of work done by laborers and mechanics employed by the construction Contractor or construction subcontractor on a particular building or work at the site thereof, including without limitation—

   i. Altering, Remodeling, installation (if appropriate) on the site of the work of items fabricated off-site;
   ii. Painting and decorating;
   iii. Manufacturing or furnishing of materials, articles, supplies, or equipment on the site of the building or work;
   iv. Transportation of materials and supplies between the site of the work within the meaning of paragraphs (a)(1)(i) and of the "site of the work" as defined in the FAR clause at 52.222-6, Davis-Bacon Act of this contract, and a facility which is dedicated to the construction of the building or work and is deemed part of the site of the work within the meaning of the "site of work" definition; and
   v. Transportation of portions of the building or work between a secondary site where a significant portion of the building or work is constructed, which is part of the "site of the work" definition in the FAR clause at 52.222-6, in the "site of the work" definition).

b) The Contractor or subcontractor shall insert in any subcontracts for construction, alterations and repairs within the United States the clauses entitled—

   i. Davis-Bacon Act;
   ii. Contract Work Hours and Safety Standards Act – Overtime Compensation (if the clause is included in this contract);
   iii. Apprentices and Trainees;
   iv. Payrolls and Basic Records;
   v. Compliance with Copeland Act Requirements;
   vi. Withholding of Funds;
   vii. Subcontracts (Labor Standards);
   viii. Contract Termination – Debarment; Disputes Concerning Labor Standards;
   ix. Compliance with Davis-Bacon and Related Act Regulations; and
   x. Certification of Eligibility.

c) The Prime Contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor performing construction within the United States with all the contract clauses cited in paragraph (b).

d) Within 14 days after award of the contract, the Contract shall deliver to the Contracting Officer a completed Standard Form (SF) 1413, Statement and Acknowledgement, for each subcontractor's signed and dated acknowledgement that the clauses set for the in paragraph (b) of this clause have been inclined in the subcontract.

e) Within 14 days after the award of any subsequently awarded subcontract the Contractor shall deliver to the Contracting Officer an updated completed SF 1413 for such additional subcontract.

f) The Contractor shall insert the substance of this clause, including this paragraph (e) in all subcontracts for construction within the United States.

25. CONTRACT TERMINATION – Debarment (Feb 1988) -- A breach of the contract clauses entitled Davis-Bacon Act, Contract Work Hours and Safety Standards Act—Overtime Compensation, Apprentices and Trainees, Payrolls and Basic Records, Compliance with Copeland Act Requirements, Subcontracts (Labor Standards), Compliance with Davis-Bacon and Related Act Regulations, or Certification of Eligibility may be grounds for termination of the contract, and for termination of the contract, and for debarment as a Contractor and subcontractor as provided in 29 CFR 5.12.

26. CERTIFICATION OF ELIGIBILITY (Feb 1988)
   a) By entering into this contract, the Contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the Contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon act or 29 CFR 5.12(a)(1).
   b) No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).
   c) The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

27. EXHIBITS: Attached hereto is Exhibit 1, Change Order Agreement, Exhibit 2, Interim Lien Waiver and Exhibit 3, Final Lien Waiver.

IN WITNESS WHEREOF, the parties have caused this AGREEMENT to be executed in two original counterparts by representatives below deemed to be authorized to execute it as of the day and year written below.

| ARborunda, Inc. | SUBCONTRACTOR: A Mountain Construction |
|---|---|
| By: [signature] | By: [signature] |
| Title: President | Title: [illegible] |
| Date: 2/16/17 | Date: 2-13-17 |

SUBCONTRACT NO: ARB-0001-0007
SUBCONTRACT AMOUNT: $458,625.29 (Includes Performance and Payment Bonds)
****PERIOD OF PERFORMANCE (POP): 26 January 2017 THRU 19 January 2017. FAILURE TO COMPLETE THE WORK WITHIN THE POP WILL RESULT IN LIQUIDATED DAMAGES OF $368.63 PER CALENDAR DAY UNTIL PROJECT IS COMPLETED AND ACCEPTED BY THE ARBORUNDA INC.****



# APPLICATION AND CERTIFICATION FOR PAYMENT G702

| TO PRIME CONTRACTOR: | FROM SUBCONTRACTOR: | | |
|---|---|---|---|
| **Arborunda Inc.**<br>**1893 Bridger Ave**<br>**Las Cruces, NM 88001** | **A Mountain Construction**<br>**1177 Scoggins Ave.**<br>**Las Cruces, NM 88005** | PROJECT NAME: **N78/Rail Gun**<br>PROJECT NO: **W9126G-17-C-0007**<br>PROJECT LOCATION: **White Sands Missile Range** | PAY REQUEST NO: **6**<br>PERIOD FROM: **9/1/2017**<br>PERIOD TO: **9/30/2017**<br>DATE OF SUBMISSION: **10/11/2017** |

## SUBCONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract Continuation Sheet. G703 has to be attached for payment.

| | | |
|---|---|---|
| 1. Original Contract Amount | $ | 450,625.29 |
| 2. Net Change by Change Orders | $ | 0.00 |
| 3. Contract Amount To Date | $ | 450,625.29 |
| 4. Total Completed To Date | $ | 332,678.00 |
| 5. Previous Applications | $ | 315,878.00 |
| 6. Total This Period | $ | 16,800.00 |
| 7. Balanc to Finish | $ | 117,947.29 |
| **8. Current Payment Due** | $ | **16,800.00** |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | | |
| TOTALS | $0.00 | $0.00 |
| NET CHANGES by Change Order | | $0.00 |

**The undersigned Subcontractor certifies and agrees to the following:**
That to the best of his knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents.
All previous Certificates for Payment issued by the Subcontactor were paid in full by Arborunda Inc.
Payment Applications have to be submitted every last day of the month and no later then the fifth of the following month, to ensure approval and payment within 30 Days, otherwise payment can be delayed up to 50 days.

By: [signature] Date: 10/11/2017
Name, Title & Signature

### ARBORUNDA INC. CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the application, Arborunda Inc. certifies to the Subcontractorr that to the best of Arborunda Inc. knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT

AMOUNT CERTIFIED $ ____________

By: ____________ Date: ____________
Name & Title

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Subcontractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Prime Contractor or Subcontractor under this Contract.

**Note: Items in RED FONT are automatically calculated from the G703 form or from items within this G702 Form. Do NOT hand enter these items on this sheet.**

tabbies
EXHIBIT
2

# CONTINUATION SHEET G703

**Subcontractor's signed G702 (Pay Request) has to be attached for Payment.**

| PAY REQUEST NO: | | 6 | PERIOD FROM: | | 9/1/2017 | PERIOD TO: | | 9/30/2017 | DATE Submitted: | 10/11/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | H | I | J | K |
| | | | WORK COMPLETED | | | | | | | |
| Item No. | DESCRIPTION OF WORK | Schedule of Value | This Period | Total from Previous Applications | Presently stored Materials on Work Site | Total Completed and Stored to Date | Balance to Finish | Percentage Completed | | |
| | N78 | | | | | | | | | |
| C1075 | Interior Concrete Demo | $2,100.00 | | $2,100.00 | | $2,100.00 | | 100% | | |
| C1095 | Interior New Concrete | $4,700.00 | | | | | $4,700.00 | | | |
| | $6,800.00 | | | | | | | | | |
| | Rail Gun Part 1 | | | | | | | | | |
| C2030 | Trough Clean and Patching | $24,300.00 | | $24,300.00 | | $24,300.00 | | 100% | | |
| C2040 | Concrete Demo | $49,600.00 | | $49,600.00 | | $49,600.00 | | 100% | | |
| ~~C2050~~ | ~~Excavation and Sub-Grade~~ | $26,800.00 | | $26,800.00 | | $26,800.00 | | 100% | | |
| C2051 | Footings and Concrete Slab | $28,900.00 | | $28,900.00 | | $28,900.00 | | 100% | | |
| C2054 | Plate and Concrete | $70,600.00 | | $67,300.00 | | $67,300.00 | $3,300.00 | 95% | | |
| C2056 | Apron and Concrete | $161,900.00 | $16,800.00 | $63,478.00 | | $80,278.00 | $81,622.00 | 50% | | |
| C2058 | POC Sub Grade | $18,300.00 | | $18,300.00 | | $18,300.00 | | 100% | | |
| C2060 | POC Concrete and Apron | $39,100.00 | | $35,100.00 | | $35,100.00 | $4,000.00 | 90% | | |
| | $426,300.00 | | | | | | | | | |
| | Rail Gun Part 2 | | | | | | | | | |
| C3020 | Access Road Sub Grade | $9,100.00 | | | | | $9,100.00 | | | |
| C3030 | Access Road Fill Dirt | $11,200.00 | | | | | $11,200.00 | | | |
| C3180 | Closeout Documents | $4,025.29 | | | | | $4,025.29 | | | |
| | $20,300.00 | | | | | | | | | |
| | GRAND TOTAL | $450,625.29 | $16,800.00 | $315,878.00 | $0.00 | $332,678.00 | $117,947.29 | | | |

EXHIBIT
3

# APPLICATION AND CERTIFICATION FOR PAYMENT G702

| TO PRIME CONTRACTOR: | FROM SUBCONTRACTOR: | | |
|---|---|---|---|
| Arborunda Inc.<br>1893 Bridger Ave<br>Las Cruces, NM 88001 | A Mountain Construction<br>1177 Scoggins Ave.<br>Las Cruces, NM 88005 | PROJECT NAME: N78/Rail Gun<br>PROJECT NO: W9126G-17-C-0007<br>PROJECT LOCATION: White Sands Missile Range | PAY REQUEST NO: 7<br>PERIOD FROM: 9/30/2017<br>PERIOD TO: 10/31/2017<br>DATE OF SUBMISSION: 10/20/2017 |

## SUBCONTRACTOR'S APPLICATION FOR PAYMENT

Application is made for payment, as shown below, in connection with the Contract Continuation Sheet. G703 has to be attached for payment.

| | | |
|---|---|---|
| 1. Original Contract Amount | $ | 456,993.04 |
| 2. Net Change by Change Orders | $ | 6,367.75 |
| 3. Contract Amount To Date | $ | 463,360.79 |
| 4. Total Completed To Date | $ | 385,145.75 |
| 5. Previous Applications | $ | 542,578.00 |
| 6. Total This Period | $ | 61,267.75 |
| 7. Balance to Finish | $ | 71,847.29 |
| 8. Current Payment Due | $ | 61,267.75 |

| CHANGE ORDER SUMMARY | ADDITIONS | DEDUCTIONS |
|---|---|---|
| Total changes approved in previous months by Owner | | |
| Total approved this Month | $6,367.75 | |
| TOTALS | $6,367.75 | $0.00 |
| NET CHANGES by Change Order | | $6,367.75 |

The undersigned Subcontractor certifies and agrees to the following:
That to the best of his knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents.
All previous Certificates for Payment issued by the Subcontractor were paid in full by Arborunda Inc.
Payment Applications have to be submitted every last day of the month and no later then the fifth of the following month, to ensure approval and payment within 30 Days, otherwise payment can be delayed up to 50 days.

By: [signature] Owner Date: 9/20/2017
Name & Title

### ARBORUNDA INC. CERTIFICATE FOR PAYMENT

In accordance with the Contract Documents, based on on-site observations and the data comprising the application, Arborunda Inc. certifies to the Subcontractor that to the best of Arborunda Inc. knowledge, information and belief the Work has progressed as indicated, the quality of the Work is in accordance with the Contract Documents, and the Contractor is entitled to payment of the AMOUNT

AMOUNT CERTIFIED $ ____________

By: ____________ Date: ____________
Name & Title

This Certificate is not negotiable. The AMOUNT CERTIFIED is payable only to the Subcontractor named herein. Issuance, payment and acceptance of payment are without prejudice to any rights of the Prime Contractor or Subcontractor under this Contract.

Note: Items in RED FONT are automatically calculated from the G703 form or from items within this G702 Form. Do NOT hand enter these items on this sheet.

# CONTINUATION SHEET G703

**Subcontractor's signed G702 (Pay Request) has to be attached for Payment.**

| PAY REQUEST NO: | | 7 | PERIOD FROM: | | 9/30/2017 | PERIOD TO: | | 10/31/2017 | DATE Submitted: | 10/20/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | H | I | J | K |
| | | | WORK COMPLETED | | | | | | | |
| Item No. | DESCRIPTION OF WORK | Schedule of Value | This Period | Total from Previous Applications | Presently stored Materials on Work Site | Total Completed and Stored to Date | Balance to Finish | Percentage Completed | | |
| | N78 | | | | | | | | | |
| C1075 | Interior Concrete Demo | $2,100.00 | | $2,100.00 | | $2,100.00 | | 100% | | |
| C1095 | Interior New Concrete | $4,700.00 | | | | | $4,700.00 | | | |
| | $6,800.00 | | | | | | | | | |
| | | | | | | | | | | |
| | Rail Gun Part 1 | | | | | | | | | |
| C2030 | Trough Clean and Patching | $24,300.00 | | $243,000.00 | | $24,300.00 | | 100% | | |
| C2040 | Concrete Demo | $49,600.00 | | $49,600.00 | | $49,600.00 | | 100% | | |
| C2050 | Excavation and Sub-Grade | $26,800.00 | | $26,800.00 | | $26,800.00 | | 100% | | |
| C2130 | Footings and Concrete Slab | $28,900.00 | | $28,900.00 | | $28,900.00 | | 100% | | |
| C2140 | Plate and Concrete | $70,600.00 | $3,300.00 | $67,300.00 | | $70,600.00 | | 100% | | |
| C2150 | Apron and Concrete | $161,900.00 | $42,000.00 | $71,478.00 | | $113,478.00 | $48,422.00 | 70% | | |
| C2160 | POC Sub Grade | $18,300.00 | | $18,300.00 | | $18,300.00 | | 100% | | |
| C2170 | POC Concrete and Apron | $39,100.00 | $4,000.00 | $35,100.00 | | $39,100.00 | | 100% | | |
| | $426,300.00 | | | | | | | | | |
| | | | | | | | | | | |
| | Rail Gun Part 2 | | | | | | | | | |
| C3020 | Access Road Sub Grade | $9,100.00 | | | | | $9,100.00 | | | |
| C3030 | Access Road Fill Dirt | $11,200.00 | $5,600.00 | | | $5,600.00 | $5,600.00 | 50% | | |
| C3180 | Closeout Documents | $4,025.29 | | | | | $4,025.29 | | | |
| | $20,300.00 | | | | | | | | | |
| | | | | | | | | | | |
| C/O | | $6,367.75 | $6,367.75 | | | $6,367.75 | | 100% | | |
| | | | | | | | | | | |
| | GRAND TOTAL | $456,993.04 | $61,267.75 | $542,578.00 | $0.00 | $385,145.75 | $71,847.29 | | | |

A MOUNTAIN CONSTRUCTION, LLC

LAS CRUCES, NM 88005
NM Lic. # 85717
DOL# 01969320110727
(575)525-1405 Phone

# Invoice

| Date | Invoice # |
|---|---|
| 10/24/2017 | 1807 |

| Bill To |
|---|
| ARborunda, Inc<br>1510 S. Solano Dr. Ste D<br>Las Cruces, NM 88001 |

| Ship To |
|---|
| |

| P.O. No. | Terms | Project |
|---|---|---|
| | | Building N78/Railgun... |

| Item | Description | Qty | Rate | Amount |
|---|---|---|---|---|
| concrete | Precast Concrete Troughs | | 63,478.00 | 63,478.00 |
| Equipment | United Rental – Forklift unit Troughs | | 1,488.91 | 1,488.91 |
| Equipment | Sunbelt Rentals – Hydraulic Excavator | | 10,547.06 | 10,547.06 |
| Labor | Alliance Riggers & Constructors | | 1,355.48 | 1,355.48 |
| Fin Chg | Statutory Interest (Federal Reg) Sub Total: $76,869.45 | | 6,149.56 | 6,149.56 |

| | |
|---|---|
| **Subtotal** | $83,019.01 |
| **Sales Tax (8.3125%)** | $0.00 |
| **Total** | $83,019.01 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $83,019.01 |



**AFFIDAVIT OF BOBBY SPEDALIERI**

STATE OF NEW MEXICO )
) ss.
COUNTY OF DOÑA ANA )

COMES NOW Bobby Spedalieri and for his testimony states as follows:

1. My name is Bobby Spedalieri.

2. I am over the age of 18 years old and give this statement freely and on my own accord.

3. I am the owner/operator of A Mountain Professional Construction, LLC. ("A Mountain").

4. A Mountain entered into a Contractual Agreement with ARborunda, Inc. ("ARborunda") on January 25, 2017.

5. The Contract is supported by offer, acceptance, consideration and mutual assent to the terms of the contract.

6. I approved and submitted the contract proposal on behalf of A Mountain to ARborunda.

7. This proposal and subsequent proposal were rejected for reasons related to ARborunda's desire to reduce costs on the job.

8. After two separate proposals were created, none of which referenced a line item for pre-precast concrete trenches or troughs, a proposal was finally accepted.

9. A schedule of values was submitted with each of the above reference proposals, and both times precast concrete trenches or troughs were excluded.

10. The final schedule of values, using ARborunda's form, was submitted, and again excluded precast concrete trenches or troughs.

11. In the initial draft of the specifications for this project, section 4.38, which was later used for troughs, was not used and listed as "NOT USED".



12.     A reference to precast concrete trenches or troughs was not introduced until amendment 3, and then only in the electrical section, section 4.38, which is outside the scope of Plaintiff's work.

13.     On May 22, 2017, Dustin Munda, an agent of ARborunda's, urged the Project Estimator to order precast concrete trenches or troughs.

14.     A Mountain never requested pricing or submittals on precast concrete troughs.

15.     The submittals and pricing information were provided for ARborunda by Dustin Munda, then passed on to A Mountain.

16.     Dustin Munda requested the quotation from the manufacturer.

17.     A Mountain made no attempt to order precast concrete trenches or troughs because they were not included in their proposal, and are not a part of their scope of work.

18.     ARborunda has consistently taken the position that A Mountain is responsible for the troughs, even though that position is not supported by the language of the contract, nor supported by the "the scope and the plans".

19.     The plans for the project do not provide direction, nor any indication, that trenches and troughs would be A Mountain's responsibility.

20.     A Mountain is not an electrical contractor, did not bid on electrical items, and is not responsible for the concrete troughs.

21.     ARborunda has breached of the contract, and has failed to pay fees due for services rendered according to the specifications agreed on by the parties.

22.     ARborunda's breach of the contract has caused A Mountain monetary injury.

23. Defendant is in breach of the contract and has failed to pay fees due for services rendered according to the specifications agreed on by the parties and is therefore liable to Plaintiffs for said fees due, as follows:

    a. An amount specified in the Application and Certification for Payment G702, Pay Request No. 6, in the amount of $16,800.00; and

    b. An amount specified in the Application and Certification for Payment G702, Pay Request No. 7, in the amount of $61,267.75;

24. Additionally, Defendant is either in breach of contract and has failed to pay fees due for services rendered (or, alternatively, has been unjustly enriched, or, alternatively, induced or knowingly allowed Plaintiffs to rely on Defendant's representations or promises to Plaintiffs' detriment) and is therefore liable for said fees due and/or restitution for the purchase of precast concrete troughs and related necessary expenses, in the amount of $83,019.01.  The troughs have already been installed on the project.  I know that Defendant has already been paid for these items, as the prime contractor, due to the fact that the government has not rejected these items and I would have been informed that these items were rejected.

25. Plaintiff is a small business that depends on the timely payment of amounts due under its contracts.  We rely on funding to come forward on a daily basis.  This affects our credibility with vendors and our credibility as a company.

26. Without timely payment of the amounts due under its contracts, Plaintiff will become insolvent within a matter of days.  All monies received from other projects have been utilized to cover expenses for work that has already been performed on this project.

27. As the prime contractor on the project, Defendant has already been paid at least $16,800.00 for the work that the undersigned company performed on the contract, based on disclosures provided to me by Defendant. Therefore, Defendant would not suffer harm due to being compelled to make the requested payment of $16,800.00 to the company, which is designated to be paid to the undersigned company.

28. In this case, the failure of Defendant to make timely payment of its next scheduled payment to Plaintiff (in the amount of $16,800.00) will result in Plaintiff's immediate insolvency within a number of days, i.e., less than 5 business days.

29. If Plaintiff becomes insolvent, then it will not be able to pursue a trial on the merits. Therefore, an adequate remedy at law would not be available to Plaintiff.

FURTHER AFFIANT SAYETH NOT.

Pursuant to 28 U.S.C. Sec 1746, I hereby certify under penalty of perjury that I have reviewed the forgoing factual statements in this Affidavit and that they are true and correct to the best of my knowledge.

BOBBY SPEDALIERI — DATE 11-21-17

On behalf of A Mountain Construction, LLC

BOBBY SPEDALIERI
On behalf of A Mountain Construction, LLC

**NOTARY VERIFICATION**

SUBSCRIBED AND SWORN to before me on this 21st day of November 2017 by Bobby Spedalieri.

My Commission Expires:
05/04/18

Notary Public for the State of New Mexico

**THIRD JUDICIAL DISTRICT**
**COUNTY OF DONA ANA**
**STATE OF NEW MEXICO**

**A MOUNTAIN PROFESSIONAL CONSTRUCTION LLC,**

**Plaintiff,**

**vs.** **No. ________________**
**Judge:**

**ARBORUNDA, INC.,**

**Defendant.**

**CERTIFICATE OF SERVICE OF APPLICATION FOR TEMPORARY RESTRAINING ORDER**

I HEREBY CERTIFY that on the 21st day of November, 2017, I caused a copy of the Application for Temporary Restraining Order / Preliminary Injunction against Defendant, ARBorunda, Inc., to be served on the following via email:

Ben Furth (benfurth64@yahoo.com)
Paul Darby Hibner (paul.hibner.work@gmail.com)
The Furth Law Firm, P.A.
780 South Walnut, Bldg. 5
Las Cruces, NM 88001
*Attorneys for ARborunda, Inc.*

Respectfully submitted,

**CARRILLO LAW FIRM, P.C.**

By____________________________

Raúl A Carrillo, Jr., N.M. Bar No. 5600
Steven E. Jones, N.M. Bar No. 121548
1001 E. Lohman Ave.
Las Cruces, NM 88001
(575) 647-3200
raul@carrillolaw.org
sjones@carrillolaw.org
*Attorneys for Plaintiff*