# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

A MOUNTAIN PROFESSIONAL
CONTRUCTION, LLC,

        Plaintiff,

v.                                                                                        No. CIV 17-1158 RB/CG

ARBORUNDA, INC.,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant ARborunda, Inc.'s Motion to Dismiss, filed on January 29, 2018. (Doc. 27.) Jurisdiction arises under 28 U.S.C. § 1331.[1] Having considered the submissions of counsel and the relevant law, the Court will **GRANT IN PART** the Motion as outlined below.

ARborunda, Inc. (Defendant), the prime contractor for a project at the White Sands Missile Range, hired A Mountain Professional Construction, LLC (Plaintiff), a subcontractor, to perform concrete work. Sometime after Plaintiff started work on the project, Defendant urged Plaintiff to order "precast concrete troughs." Despite Plaintiff's contention that precast concrete troughs were not within the scope of Plaintiff's services or responsibilities, Plaintiff made partial payment for the troughs. Plaintiff sought reimbursement for the troughs, and Defendant refused. Plaintiff continued to work on the project, but Defendant terminated Plaintiff's contract before

---

[1] Defendant removed the case to this Court pursuant to 28 U.S.C. §§1446(a), 1441(a), and the federal enclave doctrine, which "is a form of federal question jurisdiction." *Ramos v. C. Ortiz Corp.*, No. CV 15-980 MV/CG, 2016 WL 10571683, at *7 (Jan. 27, 2016), R&R adopted, No. CV 15-980 MV/CG, 2016 WL 10571684 (D.N.M. May 20, 2016) (quoting *Celli v. Shoell*, 40 F.3d 324, 328 (10th Cir. 1994) (internal citations omitted)).

Plaintiff finished all of its contractual obligations. Plaintiff now seeks payment from Defendant for the work it performed pursuant to the contract, as well as for the precast concrete troughs that Plaintiff alleges it was not obligated to purchase.

**I.     Background**[2]

Defendant hired Plaintiff "to provide concrete placement and related services" for a project at White Sands Missile Range. (Doc. 26 (2d Am. Compl.) ("SAC") ¶¶ 2, 15; *see also* Doc. 26-1 at 3.) The contract, signed by both parties in February 2017, specified in the "scope of work" section that the subcontractor would "furnish all labor, material, supplies, tools and supervision to diligently perform the following work . . . ." (*See* Docs. 26-1 at 9; 27-1 at 11.) The work is described simply as "Concrete." (*See* Doc. 27-1 at 11.)

On May 19, 2017, the manufacturer of the precast concrete troughs[3] at issue, TRENWA, Inc., sent Mr. "Dustin Munda, an agent of the Defendant," a price quotation for the troughs. (*See* SAC ¶¶ 24, 27–28; Doc. 26-10.) The total lot price was quoted as $59,935. (Doc. 26-10 at 1.) On May 22, 2017, Mr. Munda "urged" one of Plaintiff's employees—Mr. Gilbert Espinoza—to order the troughs. (SAC ¶ 24.) Mr. Munda emailed Mr. Espinoza on June 7, 2017, and told Mr. Espinoza that "[t]he pre-cast troughs have been approved for order. So go ahead and move forward on this order." (*See id.* ¶ 29; Doc. 26-5 at 1.) Mr. Espinoza ordered the troughs, and Plaintiff "advanced partial payment to TRENWA . . . in the amount of $15,500.00." (*See* Doc.

---

[2] The facts in this section are taken from Plaintiff's Second Amended Complaint (SAC), the exhibits attached to the SAC, and the contract pages attached to Defendant's Motion to Dismiss. (*See* Docs. 26 ("SAC"); 26-1–26-10; 27-1.) The Court accepts the allegations in Plaintiff's SAC as true and recites them in a light most favorable to Plaintiff.

[3] The parties refer to the materials as "precast concrete trenches or troughs." (*See, e.g.*, SAC ¶ 20.) The Court will simply refer to the materials as precast concrete troughs or "troughs."

26-5 at 2; SAC ¶ 34.) Plaintiff believes that Defendant paid for the balance of the troughs. (SAC ¶ 35.)

Plaintiff had not obtained a quotation or ordered the troughs before this date, "because they were not included in their proposal [and were] not a part of their scope of services." (*Id.* ¶ 30.) There is no specific mention of precast concrete troughs in the parties' contract. (*See* Docs. 26-1; 27-1.) Plaintiff never included a reference to precast concrete troughs in the proposals or schedule of values it submitted to Defendant. (SAC ¶¶ 19–21.) Plaintiff notes that a reference to troughs appeared in an amended draft of specifications, but the reference was included in an "electrical section, . . . which is outside the scope of Plaintiff's services." (*Id.* ¶ 23.) Plaintiff further asserts that "[t]he plans for the project do not provide direction, nor any indication, that trenches and troughs would be Plaintiff A Mountain's responsibility." (*Id.* ¶ 32.)

The parties submitted conflicting affidavits from Plaintiff's employee, Mr. Espinoza. In his first affidavit signed on November 29, 2017, he states that at the time Plaintiff submitted the proposal for the project, Plaintiff understood that the proposal included work on the troughs. (*See* Doc. 16-3.) Mr. Espinoza goes on to state, however, that he originally proposed "cast in place" troughs, as opposed to "precast concrete troughs." (*Id.* ¶ 11.) At some unspecified time later in the project, "the Army Corps of Engineers rejected the cast in place [troughs], and required pre-cast concrete troughs as required in the specifications. After that time [Mr. Espinoza]—on behalf of A Mountain—ordered the pre-cast troughs from Trenwa." (*Id.*) Mr. Espinoza asserts that it was Plaintiff's responsibility to pay for the troughs ordered from Trenwa. (*Id.* ¶ 12.)

In his second affidavit signed on January 17, 2018, Mr. Espinoza "retract[ed] any and all statements" he made in an October 10, 2017 letter[4] that he says he signed "under a state of

---
[4] Plaintiff did not include the October 10, 2017 letter among its exhibits.

duress" and while "not in a sound state of mind due to the constant pressure by [Plaintiff and Defendant] looking to [him] to resolve the dispute between them." (*See* Doc. 26-7.) Mr. Espinoza states that he did not have authority to bind Plaintiff to any contract, and "any obligation to purchase and/or manufacture the concrete 'troughs' was in no way assumed to be the responsibility of [Plaintiff] at the time the contract was executed." (*Id.*) He further asserts that Defendant "reviewed the associated schedule of values prior to the time the contract was executed and did not at that time make any indication that the concrete 'troughs' were to be purchased and/or manufactured by" Plaintiff. (*Id.*)

On November 29, 2017, Plaintiff submitted a pay request ("Pay Request No. 8") and listed "Reimbursement for Precast Troughs" under a line item marked as a "change order" in the amount of $4,468.71. (*See* Doc. 26-4; SAC ¶ 40.) The parties' contract provides that any changes to the contract "need prior written approval from the Project Manager in the form of a written Change Order. The progress billing should include amounts for approved (written) Change Orders only with reference to the Change Order numbers." (Doc. 26-1 at 2.) The contract also includes a blank example "Subcontractor Change Order Agreement" form. (Doc. 27-1 at 12.)

"On the morning of December 13, 2017, Defendant sent Plaintiff a letter stating that Plaintiff had repeatedly breached its contract with Defendant." (SAC ¶ 44; *see also* Doc. 26-8.) Defendant accused Plaintiff of "submitting a false check . . . purporting to pay Trenwa when in fact Trenwa was not paid, not paying firms for materials, not having workers' compensation insurance, refusing to complete required work at the project, and not completing work in a timely manner, among other things." (Doc. 26-8.) Plaintiff asserts that these accusations are "false or misleading . . . ." (*See* SAC ¶¶ 44–45, 48.)

4

Plaintiff contends that Defendant had been in breach of the contract before it sent the December letter, because Defendant failed to make payment on Pay Request No. 8. (SAC ¶¶ 41, 46.) Plaintiff had also continued to perform work pursuant to the parties' contract into December 2017, and Defendant failed to pay Plaintiff for this work. (*Id.* ¶¶ 42, 46.)

Defendant sent Plaintiff another letter the evening of December 13, 2017, and unilaterally terminated the parties' contract. (*Id.* ¶ 53; *see* Doc. 26-9.) Defendant stated that it was terminating the contract pursuant to ¶ 14 of the contract, which provides:

> If the SUBCONTRACTOR repeatedly fails or neglects to carry out the Work in accordance with this AGREEMENT and fails to correct Work or fails to carry out Work in the time frame set forth, ARborunda may terminate this AGREEMENT and finish the SUBCONTRACTOR's work by whatever means ARborunda deems necessary. The SUBCONTRACTOR will be responsible for the expenses and damages incurred by ARborunda in finishing the SUBCONTRACTOR's work.

(Doc. 26-9 (quoting Doc. 26-1 at 4).)

The parties' contract states:

> After completion of work, SUBCONTRACTOR will submit to ARborunda, all required closeout documents, including a final waiver of liens . . . executed by SUBCONTRACTOR, an affidavit of certified payroll declaring that all required certified payrolls have been submitted to ARborunda, copies of all warranties for materials and equipment purchased by SUBCONTRACTOR, and any final invoices for services rendered. Final invoices will be paid in full once all close out documents are received and approved by customer.

(Doc. 26-1 at 4.) In the "Project Requirements" section, under the heading "close out documents," the contract provides that Defendant will send "[a] reminder memo . . . prior to the substantial completion date" when close out documents are due. (*Id.* at 2.)

Plaintiff had completed "almost all of its obligations" under the contract when Defendant terminated the contract. (SAC ¶ 56.) Defendant has failed to make payment on four payment

5

requests, totaling $157,104.24. (*See id.* ¶¶ 56–57; *see also* Docs. 26-3–26-4, 26-8–26-9.) Plaintiff now asserts claims for breach of contract and for equitable relief. (*See* SAC at 13–14.)

## II.     Legal Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). "To survive a motion to dismiss," the complaint does not need to contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556.)

Ordinarily, a court must look only to the complaint when ruling on a motion to dismiss under Rule 12(b)(6). *See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 278 F. Supp. 3d 1245, 1259 (D.N.M. 2017). "There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference," *id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (internal citation omitted)); "and (iii) 'matters of which a court may take judicial notice,'" *id.* (quoting *Tellabs, Inc.*, 551 U.S. at 322 (internal citation omitted)). Plaintiff attached several documents to its SAC.

(*See* Docs. 26-1–26-10.) Plaintiff also referred to at least one document in the SAC that was previously submitted (*see* Doc. 26 ¶ 4 (citing Doc. 16-3)), and Defendant cited to the same document in an exhibit to its motion (*see* Doc. 27-2 at 1–2 (citing Doc. 16-3)). Finally, Defendant attached two documents to its motion. (*See* Docs. 27-1–27-2.) The Court finds that it may properly consider the following documents in addition to the SAC in considering the motion to dismiss:

(1) The parties' contract: Because the parties' contract is central to Plaintiff's SAC, the Court will consider the contract pages attached to Plaintiff's SAC (Doc. 26-1), as well as the contract pages attached to Defendant's motion (Doc. 27-1). Plaintiff stated that it would not oppose the admission of the additional contract pages. (Doc. 31 at 19–20 (asserting that it has "provided only the operative contract documents that it believed to be at issue" and "does not believe that [the additional pages] affect the outcome of this case" but "will not oppose their submission").)

(2) Payment request forms: Plaintiff discusses the four payment request forms in its SAC. (SAC ¶ 57(a) (citing Doc. 26-2), ¶ 57(b) (citing Doc. 26-3), ¶ 57(c), (e) (citing Doc. 26-4), ¶ 58 (citing Doc. 26-6).) Because the payment request forms are integral to the issue of breach of contract, the Court will consider them.

(3) Email thread between Mr. Munda and Mr. Espinoza: Plaintiff refers to the email thread regarding the order for the precast concrete troughs in its SAC. (*See* SAC ¶ 29 (citing Doc. 26-5).) Because the question of which party assumed responsibility for the troughs is integral to Plaintiff's SAC, the Court will consider this email thread.

(4) January 17, 2018 affidavit of Mr. Espinoza: Plaintiff refers to the January 17, 2018 affidavit in its SAC. (*See* SAC ¶ 4 (citing Doc. 26-7).) Because Mr. Espinoza's affidavit is referred to in

the SAC and is central to the question of which party assumed responsibility for the troughs, the Court will consider it.

(5) December 13, 2017 emails: Plaintiff refers to two December 13, 2017 emails in its SAC. (*See* SAC ¶¶ 44–46, 48 (discussing Doc. 26-8), ¶¶ 51, 53–56 (discussing Doc. 26-9).) Plaintiff does not refer to the third December 13, 2017 email that Defendant attached to its motion. (*See* Doc. 27-2 at 1–2.) Because Plaintiff referred to the first two emails in its SAC, and the content of the emails is central to the question of the breach of the parties' contract, the Court will consider only the two December 13, 2017 emails attached to Plaintiff's SAC.

(6) Cost estimate for the precast concrete troughs: Plaintiff refers to the cost estimate in its SAC. (*See* SAC ¶¶ 27–28 (citing Doc. 26-10).) Because the estimate is integral to the question of which party assumed responsibility for the troughs, the Court will consider it.

(7) November 29, 2017 affidavit of Mr. Espinoza: Plaintiff refers to the November 29, 2017 affidavit in its SAC. (*See* SAC ¶ 4 (citing Doc. 16-3).) Neither party refers to the exhibit attached to the November 29, 2017 affidavit, however, nor does Plaintiff verify the authenticity of the exhibit. (*See* Doc. 16-3-A (a "Proposal" for work on the project from Plaintiff to Defendant dated November 3, 2016).) Because Mr. Espinoza's affidavit is referred to in the SAC and is central to the question of which party assumed responsibility for the troughs, the Court will consider it. The Court will not consider the attached exhibit.

Neither party disputes the authenticity of any of the above-listed documents. *See Jacobsen*, 287 F.3d at 941 ("the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"). The Court will *not* consider the emails attached to Defendant's motion, as Plaintiff does not refer to the emails in its SAC.

**III. Analysis**

**A. The Court will dismiss Plaintiff's breach of contract claim without prejudice.**

Plaintiff contends that Defendant breached the parties' contract by forcing Plaintiff to pay for a portion of the precast concrete troughs, though the parties did not contemplate that Plaintiff would be responsible for the troughs when they signed the contract. (*See* SAC ¶ 3.) Defendant argues that the breach of contract claim fails because Plaintiff was originally responsible for the troughs, and because Plaintiff has failed to meet at least two conditions precedent for payment—completion of a written change order and submission of close out documents. (*See* Doc. 27 at 2–3.)

Plaintiff must allege four elements to maintain its breach of contract claim: "(1) the existence of a valid and binding contract; (2) the plaintiff's compliance with the contract and [its] performance of the obligations under it; (3) a general averment of the performance of any condition precedent; and (4) damages suffered as a result of defendant's breach." *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1030 (D.N.M. 2013) (quoting *McCasland v. Prather*, 92 N.M. 192, 194 (N.M. Ct. App. 1978) (internal citation omitted)). The second and third elements are at issue here.

Defendant first argues that Plaintiff has not complied with the contract, because the contractual language clearly states that Plaintiff is responsible for "all concrete work." (*See* Doc. 27 at 9–10.) Naturally, Plaintiff disagrees and claims that the precast concrete troughs were never intended to be a part of Plaintiff's responsibilities, because the troughs are actually materials necessary for electrical work and would have been the responsibility of an electrical contractor. (*See* Doc. 31 at 4; SAC ¶ 33.) Accepting Plaintiff's well-pleaded factual allegations as true, as the Court must when deciding a motion to dismiss, the Court finds that Plaintiff has sufficiently

alleged facts to show that the troughs were not originally intended to be Plaintiff's responsibility. (*See* SAC ¶¶ 3, 19–33.) Mr. Espinoza's conflicting affidavits do nothing to change this finding. Thus, the Court must deny Defendant's motion on this issue.

Defendant next contends that Plaintiff has failed to complete two conditions precedent in order to receive payment on any unpaid payment request forms. First, the parties' contract requires that Plaintiff submit a written change order and obtain "prior written approval" for any changes to the original contract. (*See* Doc. 26-1 at 2.) Defendant asserts that if Plaintiff was entitled to reimbursement for the troughs, Plaintiff was required to first submit a written change order for the added expense. (*See* Doc. 27 at 10–11.) Second, the parties' contract requires that upon "substantial completion" of the contract, Plaintiff must submit certain close out documents. (*See* Doc. 26-1 at 2.) As Plaintiff did not submit either a written change order or the required close out documents, Defendant contends that Plaintiff is not entitled to relief.

In its response to Defendant's motion, Plaintiff argues that Mr. Munda's emailed instruction to Mr. Espinoza constitutes a written change order itself. (Doc. 31 at 15–16.) Defendant responds that Plaintiff did not make this claim in its SAC, and regardless, the email does not comply with the "*specific* form of a written change order" as required in the contract. (Doc. 33 at 3 (citing Doc. 26-1 at 2).) Neither party discusses the purpose of requiring a written change order, but the Court presumes the purpose is to protect Defendant from incurring construction costs beyond those the parties originally agreed to. *See*, *e.g.*, *Top Line Builders, Inc. v. Bovenkamp*, 320 P.3d 130, 137 (Wash. Ct. App. 2014) (noting that "the purpose of [the property owner's lender] requiring change orders was to protect it from cost overruns exceeding the loan amount"). Plaintiff did not explicitly make the claim in its SAC that Mr. Munda's email constitutes a written change order and "prior written approval from the Project Manager" for a

contractual modification, but Plaintiff did state facts sufficient to allege such a claim. (*See* SAC ¶¶ 24, 29 (asserting that while the troughs were not Plaintiff's responsibility, Mr. Munda (the Project Manager) "urged" and "ordered Plaintiff in writing to 'move forward on this order'").) Drawing "all reasonable inferences in the plaintiff's favor[,]" *see Raja v. Ohio Sec. Ins. Co.*, ___ F. Supp. 3d ___, 2018 WL 1626258, at *6 (D.N.M. 2018) (citations omitted), the Court can plausibly infer that under the circumstances, the parties understood the conversations and emails between Mr. Munda and Mr. Espinoza functioned as a change order and "prior written approval" to modify the terms of the original agreement.

Even assuming that the parties understood the emails to function as a written change order, the emails do not provide enough information to show *how* the parties modified the contract to encompass the precast concrete troughs. New Mexico law provides "that 'in the absence of a prohibiting statute, a written contract may be orally modified by the parties who made the original agreement.'" *Medina v. Sunstate Realty, Inc.*, 889 P.2d 171, 173 (N.M. 1995) (quoting *Wendell v. Foley*, 594 P.2d 750, 753 (N.M. Ct. App.), *cert. denied*, 593 P.2d 1078 (N.M. 1979) (internal citation omitted)). "A modification occurs when the parties intend to continue the contractual relationship but wish to change one or more of the terms of the contract. In order for a modification to the contract to be effective, there must be mutual assent" by the parties for the modification. NMRA, Civ. UJI 13-817. "For there to be a mutual assent, the parties must have had the same understanding of the material terms of the agreement." NMRA, Civ. UJI 13-816. Courts may look to "the parties' intentions, words, and actions, and at the surrounding circumstances" to determine what the parties understood. *Id.*

Here, Plaintiff has simply not alleged facts sufficient to demonstrate *what* the parties understood. Plaintiff has included no details about the conversations between Mr. Munda and

11

Mr. Espinoza beyond the emails. And while Plaintiff has alleged that both parties understood the troughs were not originally Plaintiff's responsibility, there are no allegations to demonstrate what the parties understood their new obligations would be. Was Plaintiff simply to order the troughs and make one payment? Was Defendant expected to reimburse Plaintiff in full for the amount Plaintiff paid to TRENWA? Plaintiff alleges that it paid $15,500 to TRENWA, but confusingly, it only initially sought $4,468.71 from Defendant in its payment request form. (*See* Doc. 26-4.) Was Plaintiff expected to install the troughs and be paid for its labor? The SAC is silent on the terms of the agreement. In fact, Plaintiff affirmatively states that Defendant "has *consistently* taken the position that A Mountain Construction is responsible for the precast troughs, even though that position is not supported by the language of the contract, nor supported by the scope of services or the plans for the project." (SAC ¶ 31 (emphasis added).) Based on the facts alleged, the Court is unable to draw the reasonable inference that the parties mutually assented to the terms of an alleged modification to their contract. *See*, *e.g.*, *Willis v. Dep't Stores Nat'l Bank*, 613 F. App'x 755, 757 (10th Cir. 2015) (noting that "Plaintiff's breach-of-contract claim was properly dismissed because the complaint does not identify a contractual promise that was breached"). The Court must grant Defendant's motion on this issue.

Defendant asks the Court to dismiss Plaintiff's SAC with prejudice, as Plaintiff has already filed three complaints and "[e]ach suffers from the same incurable legal defects." (Doc. 27 at 19.) The Court finds, however, that the defects in the breach of contract claim are not "incurable" and will dismiss the claim without prejudice.

Finally, Defendant contends that Plaintiff has failed to provide close out documents, which are a condition precedent to receiving payment under the contract. (*See* Doc. 27 at 2–3, 11–12; *see also* Doc. 26-1 at 2.) Defendant argues that because Plaintiff's work was substantially

12

complete, Plaintiff was required to submit these close out documents despite the fact that Defendant unilaterally terminated the parties' contract based on alleged breaches by Plaintiff. (*Id.*) Defendant does not assert, however, that it sent Plaintiff "[a] reminder memo . . . prior to the substantial completion date" as required by the contract. (*See* Doc. 26-1 at 2.) Thus, it appears that Plaintiff's duty to submit close out documents was not triggered under the contract. Regardless, as Plaintiff notes in its response, it was "unable to complete these documents" due to "Defendant's premature termination of the contract . . . ." (Doc. 31 at 18.) "Where a party to a contract prevents the fulfillment of condition precedent to its performance under the contract, that party cannot rely on such a condition precedent to defeat its liability under the contract." *Stromei v. Rayellen Res., Inc.*, No. 30,499, 2012 WL 1720616, at *6 (N.M. Ct. App. Apr. 23, 2012). Construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's duty to send the close out documents was not triggered, because there is no allegation that Defendant sent the reminder memo. Alternatively, Plaintiff may be excused from performing the condition precedent by Defendant's termination of the contract. In either case, it is premature to dismiss the breach of contract claim solely on the basis of this argument.

### B. The Court will dismiss Plaintiff's unjust enrichment claim.

Plaintiff requests "equitable relief" in count II of the SAC and asserts that it "is entitled to damages based on a theory of *quantum meruit* or other equitable doctrines to be discovered or proven at trial." (SAC ¶¶ 76–78.) Defendant argues that all equitable claims must fail, because "Plaintiff has an adequate relief at law." (Doc. 27 at 12.) The Court agrees.

"To prevail on a claim for quantum meruit or unjust enrichment, 'one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust.'" *Acevedo v. Sw. Airlines Co.*, No. CV 16-24

MV/LF, 2018 WL 2392215, at *12 (D.N.M. May 25, 2018) (quoting *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2002) (internal citation omitted)). "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity." *Id.* (quoting *Ontiveros Insulation Co.*, 3 P.3d at 698–99 (internal citations omitted)). "Accordingly, where there is a contractual relationship between the parties, claims for unjust enrichment or quantum meruit are barred." *Id.* (citing *Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) ("[T]he hornbook rule [is] that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue") (internal quotation and citation omitted)). Here, there is no dispute that the parties are in privity of contract. Accordingly, Plaintiff's claim for equitable relief is barred, and the Court will dismiss Count II with prejudice.

> **C.    The Court makes no findings on Plaintiff's attempt to reserve a right to make a later claim under the Miller Act.**

Plaintiff purports to "reserve[] the right to file a Miller Act claim against the Defendant's bonding company, pursuant to 40 U.S.C. § 3133, after 90 days have elapsed from the date Plaintiff last furnished labor or material on the project at issue in this case." (SAC at 15.) Defendant asserts that Plaintiff "has no legal basis to bring a Miller Act claim" and asks the Court to dismiss it. (Doc. 27 at 16–17.) Plaintiff responds that its "reservation of rights to file a Miller Act claim was not an independent cause of action or claim for relief from this Court." (Doc. 31 at 20.) As Plaintiff's attempted reservation of its right to make a claim is not a count in its SAC, the Court makes no findings on the attempt or on Plaintiff's later ability to make such a claim.

## IV. Conclusion

Plaintiff has not pleaded facts sufficient to show that the parties mutually assented to the terms of the purported contractual modification. Accordingly, Plaintiff fails to state a claim for breach of contract, and the Court will dismiss Count I without prejudice.

Because the parties are in privity of contract, Plaintiff may not assert a claim for equitable relief. The Court will dismiss Count II with prejudice.

**THEREFORE,**

**IT IS ORDERED** that Defendant ARborunda, Inc.'s Motion to Dismiss (Doc. 27) is **GRANTED IN PART**;

**IT IS FURTHER ORDERED** that if Plaintiff wishes to file a motion to amend its SAC, it must file the motion no later than July 23, 2018.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE